# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 46114

FRANK P. HUNGATE and THOMAS K. )
HUNGATE, as Trustees of The Hungate )
Trust; THE A&E FAMILY L.L.C., an Idaho )
limited liability company; ANNE E. )
ASHBURN, an individual; ELEANOR )
JONES, an individual; FRANK HUNGATE, )    Boise, August 2019 Term
an individual; and JOHN HUNGATE, an )
individual; )
                                        )    Opinion Filed: February 25, 2020
                                        )
   Petitioners-Appellants, )    Karel A. Lehrman, Clerk
v. )
BONNER COUNTY, a political subdivision of )
the State of Idaho, acting through the Bonner )
County Board of Commissioners, )
                                        )
   Respondent, )
                                        )
and )
                                        )
STEJER'S INC., a Washington corporation, )
                                        )
   Intervenor-Respondent. )
                                        )

Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County. Cynthia K. C. Meyer, District Judge.

The decision of the district court is <u>affirmed.</u> Costs on appeal are <u>awarded</u> to Bonner County and Stejer's, Inc. as the prevailing parties.

Givens Pursley LLP, Boise, attorneys for Appellant. Deborah E. Nelson argued.

Bonner County Prosecutor, Sandpoint, attorneys for Respondent. William S. Wilson argued.

Finney & Finney, Sandpoint, attorneys for Intervenor-Respondent Stejer's Inc. John A. Finney argued.

_____

BEVAN, Justice

# I. NATURE OF THE CASE

This is an appeal from a district court sitting in its intermediate appellate capacity. Below, the Board of County Commissioners for Bonner County ("Board") granted Stejer's, Inc.'s request for three variances ("the Variances") from applicable lot setbacks required by the Bonner County Revised Code. Neighboring land owners—Frank P. Hungate and Thomas K. Hungate, as trustees of the Hungate Trust, the A&E Family L.L.C., Anne E. Ashburn, Eleanor Jones, Frank Hungate, and John Hungate (collectively "the Hungates") appealed the Board's decision. The district court held that the Board erred in approving the Variances, but ultimately affirmed the Board's decision after it determined that the Hungates failed to show that their substantial rights were prejudiced. The Hungates appealed to this Court. We affirm.

# II. FACTUAL AND PROCEDURAL BACKGROUND

Between 1967 and 1972 Norma Stejer acquired three oddly shaped parcels located on the north end of Priest Lake referred to as Tax-2, Tax-9, and Tax-10. In 1967, the Hungates acquired neighboring property located north and east of Tax-2, Tax-9, and Tax-10. The parcels are zoned R-5 rural, which allows for one dwelling per five acre density. Bonner County Revised Code ("BCRC") § 12-323. Additionally, dwellings on R-5 parcels require minimum front yard setbacks of twenty-five feet, minimum rear yard setbacks of twenty-five feet, and minimum side yard setbacks of twenty-five feet. BCRC § 12-411. In 1981, Norma Stejer quitclaimed the three parcels to Stejer's, Inc. The Variances at the center of this dispute resulted from buildings Stejer's, Inc. constructed on Tax-9 and Tax-10.

In 1997, Stejer's, Inc. built a 30' x 40' garage on Tax-10 (the "Beige Building") without a permit. The Beige Building originally encroached one and a half feet onto Thistledo Lane, a private road owned by the Hungates; however, after realizing the encroachment, Stejer's, Inc. moved the building to its current location about five feet away from Thistledo Lane. At some point following its construction, Stejer's, Inc. began using the Beige Building as a three-bedroom residence without obtaining the proper septic permits. There is also a two-bedroom cabin on Tax-10 (the "Yellow Building").

In 1999, Stejer's, Inc. obtained a permit to construct a storage garage (the "Green Building") on Tax-9; however, as constructed, it straddles the line between Tax-9 and Tax-10. The building permit for the Green Building described the structure as "Garage + Storage" which was approved with a twenty-five-foot setback. However, the Green Building was not built in

compliance with the building permit. At some point following construction, Stejer's, Inc. started using the Green Building as a six-bedroom residence without first obtaining the proper septic permits. In 2015, the "next generation" of Stejers assumed control of the parcels.

The Panhandle Health Department sent Stejer's, Inc. a notice of violation for the construction of residential homes on Tax-9 and Tax-10 without the necessary septic permits and approvals in December 2015. By February 2016, the Health Department and Stejer's, Inc. entered into a Consent Order which required Stejer's, Inc. to: (1) convert the Green Building from a six-bedroom duplex to a one-bedroom single-family residence; (2) convert the Beige Building from a three-bedroom dwelling to a two-bedroom dwelling; and (3) convert the Yellow Building from a two-bedroom bunkhouse to a storage building.

Nearly a year later, Stejer's, Inc. applied for variances from the applicable setbacks on Tax-9 and Tax-10. In Tax 9, Stejer's, Inc. requested a six-foot rear yard setback and a seventeen-foot front yard setback, even though twenty-five foot setbacks are required. Additionally, Stejer's, Inc. sought a variance authorizing the conversion of the Green Building into a single-family dwelling. In Tax 10, Stejer's, Inc. sought a seven-foot front yard setback where twenty-five feet is required, and a variance authorizing the Beige Building to be a single-family dwelling.

On May 4, 2017, the Bonner County Planning and Zoning Commission held a public hearing on the proposed Variances. The Planning and Zoning Commission denied the Variances after finding that the need for the Variances arose out of Stejer's, Inc.'s own improper actions; as such, the Variances were inconsistent with Bonner County Revised Code, which only allowed a variance to be granted when the "circumstances of the proposal" had their origin in "circumstances over which the applicant has no control." BCRC § 12-234.

Stejer's, Inc. appealed the denial of the Variances to the Board. On June 21, 2017, the Board held a public hearing in which it considered testimony as well as letters in support of and in opposition to the Variances. Ultimately, the Board approved the Variances. The Board explained that denying the Variances would be punishing the new generation of Stejers for "the sins of the father" when they were trying to do the right thing and bring the structures into compliance. The Board was not persuaded that this was anything more than a neighborhood squabble and, because the buildings had been there for twenty years, there would be no additional harm in granting the Variances.

3

On September 18, 2017, the Hungates petitioned for judicial review of the Board's decision. Stejer's, Inc. moved to intervene, to which the Hungates and the County stipulated. The Hungates alleged the Board's decision to grant the Variances was in error under Idaho Code section 67-5279(3) and that the decision prejudiced their substantial rights. In response, the County did not dispute the Hungates' contention that the Board had erred under Idaho Code section 67-5279, but the County maintained that the Board's decision should be upheld because the Hungates could not show that any of their substantial rights were prejudiced. Stejer's, Inc. defended against the petition by maintaining that Board did not err under section 67-5279, nor could the Hungates show prejudice to a substantial right.

After a hearing, the district court found that the Board committed several errors in approving the Variances. Even so, the court affirmed the Board's decision after holding that the Hungates had failed to demonstrate that a substantial right had been prejudiced. The Hungates timely appealed to this Court.

### III. ISSUES ON APPEAL

1. Whether the Hungates have shown that the Board committed reversible error in a manner specified in Idaho Code section 67-5279(3).

2. Whether the Hungates have shown that a substantial right was prejudiced by the Board's decision to approve the Variances.

3. Whether the district court erred in declining to award the Hungates attorney fees and costs under Idaho Code section 12-117 and whether the Hungates should be awarded attorney fees and costs on appeal.

### IV. STANDARD OF REVIEW

"The Local Land Use Planning Act (LLUPA) allows an affected person to seek judicial review of an approval or denial of a land use application, as provided for in the Idaho Administrative Procedure Act (IDAPA)." *917 Lusk, LLC v. City of Boise*, 158 Idaho 12, 14, 343 P.3d 41, 43 (2015); I.C. § 67–6521(1)(d). "For the purposes of judicial review of LLUPA decisions, a local agency making a land use decision, such as the Board of Commissioners, is treated as a government agency under IDAPA." *In re Variance ZV2011-2*, 156 Idaho 491, 494, 328 P.3d 471, 474 (2014). Variance permits fall under LLUPA, and "an applicant denied a variance permit by a county board of commissioners, or aggrieved by the decision of the board, may seek judicial review under IDAPA." *Wohrle v. Kootenai Cnty.*, 147 Idaho 267, 271, 207 P.3d 998, 1002 (2009).

When a district court acts in its appellate capacity under IDAPA, "we review the district court's decision as a matter of procedure." *Lusk*, 158 Idaho at 14, 343 P.3d at 43 (quoting *Williams v. Idaho State Bd. of Real Estate Appraisers*, 157 Idaho 496, 502, 337 P.3d 655, 661 (2014)). When doing so, we conduct an independent review of the agency record. *Id.* (citing *Dry Creek Partners, LLC, v. Ada Cnty. Com'rs, ex rel. State*, 148 Idaho 11, 16, 217 P.3d 1282, 1287 (2009)). "There is a strong presumption that the zoning board's actions were valid and that it has correctly interpreted its own zoning ordinances." *Hawkins v. Bonneville Cnty. Bd. of Comm'rs*, 151 Idaho 228, 231, 254 P.3d 1224, 1227 (2011) (citing *Sanders Orchard v. Gem Cnty. ex rel. Bd. of Cnty. Comm'rs*, 137 Idaho 695, 698, 52 P.3d 840, 843 (2002)). When the district court has affirmed the Board's actions, we will uphold its decision provided the Board's findings were supported by substantial and competent evidence; however, we freely review the district court's conclusions of law. *Id.* (internal citation omitted).

## V. ANALYSIS

The Hungates must do two things to set the Board's decision aside: (i) establish the Board erred in one of the ways specified in Idaho Code section 67-5279(3); and (ii) show the decision has prejudiced the Hungates' substantial rights. *Hawkins*, 151 Idaho at 232, 254 P.3d at 1228.

**A.     The Hungates have established that the Board violated Idaho Code section 67-5279(3) in its decision approving the Variances.**

The Hungates first argue that the Board committed reversible error in a manner specified in Idaho Code section 67-5279(3) when it granted the Variances. Section 67-5279(3) provides that a board's decision will be overturned only where its findings, inferences, conclusions, or decisions are

> (a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) not supported by substantial evidence on the record as a whole; or (e) arbitrary, capricious, or an abuse of discretion.

I.C. § 67-5279(3).

The Hungates argued before the district court that the Board erred in granting the Variances under section 67-5279(3) because the decision was: (1) in violation of Bonner County Revised Code section 12-234 and Idaho Code section 67-6516; (2) in excess of the Board's statutory authority; (3) not supported by substantial evidence on the record; and (4) arbitrary,

5

capricious, or an abuse of discretion. The County did not address the Hungates' claims of error in their response, thereby conceding these claims. Stejer's, Inc. responded to some of the Hungates' claims, but did not address the Hungates' argument that the Board's decision exceeded its statutory authority or that the decision constituted an abuse of discretion. Based on the uncontested assignments of error the district court properly found that the Hungates had established that the Board's decision was in error. The district court applied the well-established principle that a court "will not consider issues cited on appeal that are not supported by propositions of law, authority or argument." *Carney v. Heinson*, 133 Idaho 275, 283, 985 P.2d 1137, 1145 (1999) (internal citation omitted). "[T]o the extent that an assignment of error is not argued and supported in compliance with the I.A.R., it is deemed to be waived." *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) (quoting *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005)).

The district court next addressed Stejer's, Inc.'s argument that the Board's decision did not violate BCRC section 12-234 because the Board's decision was supported by substantial evidence in the record, and the Board followed proper procedures to reach its decision. Bonner County Revised Code section 12-234 allows a variance to be granted when specific requirements are met:

> A. Conditions apply to the property that do not apply generally to other properties in the same zone or vicinity, which conditions are a result of lot size, shape, topography, or other circumstances over which the applicant has no control.
>
> B. Special conditions and circumstances do not result from the actions of the applicant.
>
> C. The granting of the variance is not in conflict with the public interest in that it will not be detrimental to the public health, safety, or welfare, or materially injurious to properties or improvements in the vicinity of the subject parcel or lot.

BCRC § 12-234.

The record reflects that Stejer's, Inc. violated the County Code, thereby creating the need for the Variances by building the structures without proper permits and without proper setbacks. Indeed, this is why the Planning and Zoning Commission first denied Stejer's, Inc.'s request for the Variances. While Stejer's, Inc. argued that it was not possible to obtain permits when the buildings were constructed, their claim was contradicted by the Hungates' evidence that the Hungates had built a home on their property around the same time and obtained building permits. Thus, not only have the County and Stejer's, Inc. failed to argue against all the errors committed

by the Board in granting the Variances, but it is also established that Stejer's, Inc.'s need for the Variances arose out of Stejer's, Inc.'s own conduct. For both reasons, the district court was correct in concluding that the Board's decision violated Bonner County Revised Code section 12-234(B). Accordingly, the Hungates established that the Board erred under Idaho Code section 67-5279(3).

**B.    The Hungates have failed to show the Board's decision to grant the Variances prejudiced their substantial rights.**

Having established that the Board erred in granting the Variances, the Hungates must also show that their substantial rights have been prejudiced by the error. This is not easy; the legislature has restricted challenges against agency action by decreeing that "[n]otwithstanding the [grounds for legal error previously discussed], agency action shall be affirmed unless substantial rights of the appellant have been prejudiced." I.C. § 67-5279(4). Thus, even when an agency blatantly contravenes its own ordinance, as the County did here, contestants like the Hungates must still establish prejudice to a *substantial right* to overcome that agency action. *See Hawkins,* 151 Idaho at 232, 254 P.3d at 1228 (internal citation omitted). As a result, a district court may affirm a governing board's decision solely on the grounds that the petitioner has not shown prejudice to a substantial right. *Id.*

The Hungates allege the district court erred in analyzing prejudice by not appropriately scrutinizing the current illegal, non-conforming status of Stejer's, Inc.'s property when determining whether the Variances would cause prejudice. The Hungates maintain that the district court's analysis was flawed because it did not consider that if the Variances were not granted the structures would have to be torn down or brought into compliance. This premise simply re-states the Hungates' first argument and fails to focus on the standard of review. When the district court has affirmed the Board's actions, as was the case here, our precedent dictates that we affirm the district court's decision unless the party contesting the Board's decision shows the Board's action prejudiced its substantial rights. *Lusk,* 158 Idaho at 14, 343 P.3d at 43. The Board granted the Variances, placing great weight on the fact that the offending structures had been in place for twenty years. While denial of the Variances would have caused Stejer's, Inc. to relocate, modify, or demolish the structures, such a potential outcome does not establish that a substantial right of the Hungates would be prejudiced from the Board's decision to grant the Variances.

This Court has not articulated a bright line test governing whether a petitioner's substantial rights have been violated, however, we have held that such rights were harmed when: (1) property values are impacted; or (2) the variance will interfere with the use and enjoyment of property. *Hawkins,* 151 Idaho at 233, 254 P.3d at 1229; *see also Price v. Payette Cnty. Bd. of Cnty. Comm'rs*, 131 Idaho 426, 431, 958 P.2d 583, 588 (1998) (recognizing prejudice to a substantial right and vacating a board decision because it could impact property value or the petitioners' use and enjoyment of their land).

The nature of the proof required to establish such prejudice is aptly shown by reference to other cases from this Court. For example, in *Hawkins*, this Court held that a board of commissioners' decision affirming variances granted to the property owners to allow them to construct new homes that were zoned agricultural did not prejudice the neighbor's substantial rights. 151 Idaho at 232, 254 P.3d at 1228. In so holding, the Court recognized that a petitioner must show something more than that the County misapplied its own ordinance. It is self-evident that the party opposing a variance has no substantial right in merely seeing someone else's application adjudicated correctly, absent proof of prejudice to their rights as a result of the variance. *Id*. at 232–33, 254 P.3d at 1228–29.

In *Lusk*, the petitioner satisfied the "something more" test articulated in *Hawkins* by showing that the proposed construction of 622 bedrooms for student housing in their neighborhood, with only 280 parking spaces, would potentially drive business away from the neighborhood, require time and expense for the petitioner to police parking on its own property, and cause a reduction of value of the petitioner's property. 158 Idaho at 19, 343 P.3d at 48. The Court held that the bare facts of the project, without even attempting to evaluate the impact of guests who arrive by automobile, presented "sufficient evidence that Lusk is in jeopardy of economic harm from the project to satisfy the requirements set forth in *Hawkins*." *Id*.

> a. *The Hungates have waived any argument concerning whether their property values were impacted by the Variances.*

First, the Hungates argue that their rights have been substantially prejudiced by the reduced property values caused by the Variances. However, in response the County alleges that the Hungates are precluded from arguing that their property values were impacted by the Variances because they did not adequately raise this argument below. Indeed, the only evidence about property values before the Board came from letters written by two neighbors, one of whom

8

suggested that the Variances would actually increase the property values. The other neighbor's letter merely made a passing, conclusory reference to reduced property values.

"Review on appeal is limited to those issues raised before the administrative tribunal." *Johnson v. Blaine Cnty.*, 146 Idaho 916, 920, 204 P.3d 1127, 1131 (2009). While the Hungates did bring up diminished property value to the district court, the court—sitting in its appellate capacity—properly recognized that this argument was not raised *before the Board*. "[A]n appellate court will not decide issues presented for the first time on appeal." *Johnson*, 146 Idaho at 920, 204 P.3d at 1131. On appeal, the Hungates maintain that the reduction in property value and interference with use and enjoyment are interrelated; however, the specific question is whether the Hungates raised the issue of property devaluation to the Board. The record reflects that they did not. The Hungates' failure to argue that the Variances would reduce their property values before the Board precludes review of that argument on appeal.

Even if we were to consider the merits of the Hungates' claims, they have provided no direct evidence to support their allegation that their property value has been affected by the Variances. In fact, the Hungates have presented no evidence of how Stejer's, Inc.'s noncomplying structures have impacted their property values in the nearly twenty years that they have existed. Instead, the Hungates have merely alleged that the Variances would somehow cause a reduction in value to their property. "[T]he petitioner must still show, not merely allege, real or potential prejudice to his or her substantial rights." *Hawkins*, 151 Idaho at 233, 254 P.3d at 1229. If Stejer's, Inc.'s structures had already damaged the Hungates' property values, then the Hungates should have provided some *evidence* to establish a reduction in value. The Hungates' failure to introduce such evidence is fatal to their argument that their substantial rights have been prejudiced by a reduction of their property values.

> b. *The Hungates have failed to show that the Variances would interfere with the use and enjoyment of their property.*

In addition to a reduction of their property value, the Hungates argue that approval of the Variances creates: (1) increased intensity of use; (2) increased traffic volumes on Thistledo Lane; (3) excessive lot coverage and unsightly architecture out of character with surroundings; (4) reduced privacy; (5) safety concerns; and (6) reduced enjoyment of wildlife and scenic views found on Priest Lake. These arguments are likewise unsupported by the record. As to the Hungates' first two allegations, no evidence supports the argument that granting the Variances

9

would somehow result in *increased* intensity of use and traffic volumes. Through the Consent Order, Stejer's, Inc. has already been required to reduce the number of people that Tax-9 and Tax-10 can accommodate. Indeed, Stejer's, Inc. agreed to: (1) convert the Green Building from a six-bedroom duplex to a one-bedroom single-family residence; (2) convert the Beige Building from a three-bedroom dwelling to a two-bedroom dwelling; and (3) convert the Yellow Building from a two-bedroom bunkhouse to a storage building. Assuming the measures in the Consent Order were followed, it is unclear how the Hungates can show the Variances would result in increased intensity of use and increased traffic volumes on Thistledo Lane; thus, the Hungates' first two arguments fail based on the clear evidence in the record.

The Hungates also argue that Stejer's, Inc.'s unsightly architecture is out of character with the property's surroundings. Yet, the structures' aesthetics are not governed by the County Code. We have looked to nuisance law when determining whether a substantial right is at stake. *Hawkins*, 151 Idaho at 233, 254 P.3d at 1229. In general, "[a] landowner does not have the right under nuisance law to prohibit upon adjoining land the erection of structures that he or she considers not to be aesthetically pleasing." *McVicars v. Christensen*, 156 Idaho 58, 62, 320 P.3d 948, 952 (2014); *White v. Bernhart*, 41 Idaho 665, 669–70, 241 P. 367, 368 (1925) (holding that the fact that a building "is unsightly or out of harmony in construction with adjacent buildings, and therefore not pleasing to the eye, would not make it offensive to the senses"). Thus, the Hungates cannot claim substantial impairment to their rights by what they consider to be unattractive buildings on a neighbor's property.

The Hungates safety concerns are also unsupported in the record. No evidence supports the notion that Stejer's, Inc.'s use of its properties has impaired access across Thistledo Lane over the last two decades. Moreover, the North Narrows Fire District, the Bonner County Road and Bridge Quality Department, the Idaho Department of Water Resources and the Idaho Department of Environmental Quality did not express any concerns with the Variances.

The Hungates' claims regarding impact to the lakefront and rural location of the property, the excessive lot coverage, reduced privacy, and reduced enjoyment of wildlife and scenic views found on Priest Lake are the types of impacts that could potentially prejudice the use and enjoyment of their property. Even so, the Hungates have again provided no evidence in the record to explain how the Board's action to grant the Variances has undermined the use or enjoyment of their property, given that the structures have been in place for twenty years. We

10

affirm the district court's conclusion that the Hungates have failed to show a substantial right was prejudiced.

**C.      The district court did not abuse its discretion in denying the Hungates' request for attorney fees and the Hungates have no right to attorney fees on appeal.**

The Hungates maintain that they were entitled to attorney fees under Idaho Code section 12-117 because the Board issued its decision without a reasonable basis in fact or law and so the Hungates should have been the prevailing party before the district court. The Hungates also argue that they are entitled to attorney fees and costs on appeal under Idaho Code section 12-117.

Idaho Code section 12-117 provides:

> [I]n any proceeding involving as adverse parties a state agency or a political subdivision and a person, the state agency, political subdivision or the court hearing the proceeding, including on appeal, shall award the prevailing party reasonable attorney's fees, witness fees and other reasonable expenses, if it finds that the nonprevailing party acted without a reasonable basis in fact or law.

I.C. § 12-117(1). "In determining which party to an action is a prevailing party and entitled to costs, the trial court must, in its sound discretion, consider the final judgment or result of the action in relation to the relief sought by the respective parties." I.R.C.P. 54(d)(1)(B). If the court determines that a party to an action prevailed in part and did not prevail in part, it may apportion the costs among the parties in a fair and equitable manner after considering all the issues and claims involved in the action and the resulting judgment or judgments obtained. *Id.*

A necessary prerequisite to an award of attorney fees under section 12-117 is that the Hungates prevailed before the district court. While the Hungates prevailed in part before the district court by arguing that the Board erred under Idaho Code section 67-5279(3), the Board's decision was ultimately affirmed. Therefore, the district court did not abuse its discretion in declining to award the Hungates attorney fees. On appeal, the Hungates similarly prevailed in part, but cannot be deemed the prevailing party because the district court's decision was ultimately affirmed. Therefore, they are not entitled to attorney fees under section 12-117.

## VI. CONCLUSION

The district court decision is affirmed. Costs awarded to Bonner County and Stejer's, Inc. as the prevailing parties.

Chief Justice BURDICK and Justice BRODY CONCUR.

STEGNER, J., concurring in the result.

11

I agree with the result the majority has reached in affirming the decision of the district court under Idaho Code section 67-5279(4). I write separately to explain how I view this case.

Reversal under Idaho Code section 67-5279(4) requires identification of a substantial right, and then demands a showing that this right has been prejudiced. A classic showing of prejudice to a substantial right would be "reduction in the [petitioner's] land value or interference with his or her ownership of the land." *See Hawkins v. Bonneville Cty. Bd. of Comm'rs*, 151 Idaho 228, 233, 254 P.3d 1224, 1229 (2011). While this showing is not easy, our decision in *Hawkins* signals that where property rights are implicated, prejudice to a substantial right is not, in fact, insurmountable: "It would be instructive to look to law relating to property rights, nuisance, and trespass when determining if a substantial right is at stake in a case such as this." *Id.* In addition, individual property rights affected by the need for public parking are the kind of "substantial rights" we have previously recognized. *See 917 Lusk, LLC v. City of Boise*, 158 Idaho 12, 343 P.3d 41 (2015).

The record before us is replete with allegations and inferences that, if they had been corroborated with evidence, could have established prejudice to the Hungates' substantial rights. However, there was no substantive evidence provided to show diminution of value to the Hungates' property as a result of Stejer's, Inc.'s use of its property. Likewise, there was no evidence regarding the effect on the adjoining Priest Lake wetlands or the Hungates' property that was caused by Stejer's, Inc.'s various unpermitted and uninspected septic systems. No evidence established that the burden on Thistledo Lane, an easement over the Hungates' property, had increased or would continue to do so, or that such an increase would affect the Hungates' property value. Had the Hungates provided this kind of evidence, this would be a much different case.

As a final note, I am also unpersuaded that the length of time the noncompliant buildings have existed would affect the Hungates' ability to make a showing of prejudice to a substantial right. To reason otherwise would encourage property owners to flagrantly disregard the governing land use ordinances, and then apply for variances for their existing noncompliance because challengers would not be able to meet their burden of establishing prejudice. I do not believe that this was the intent of the Idaho Legislature when it established review of agency action in Idaho Code section 67-5279. However, the Hungates must show prejudice before this Court can determine that agency action *perpetuated* this prejudice. As a result, because of the

12

unique posture of this case, and the failure of the Hungates to prove that a substantial right has been prejudiced, I ultimately concur with the result the majority has reached.

Justice MOELLER CONCURS.